UNITED STATES OF AMERICA
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | DL 18-00771 |
| JAN A. SANDERS, ) | Chapter 7 |
| ) | Petition Date: 2/28/18 |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Adversary Proceeding No. _____ |
| ) | |
| v. ) | |
| ) | Hon. Scott W. Dales |
| JAN A. SANDERS, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

The United States of America, by counsel and on behalf of the Social Security Administration ("SSA"), complains and alleges against Jan A. Sanders ("Debtor-Defendant") as follows:

1. This adversary proceeding relates to *In re: Jan A. Sanders*, Debtor, Case No. DL 18-0077, Chapter 7, Western District of Michigan, Southern Division. This Court has jurisdiction over this matter under the provisions of 28 U.S.C. §§ 157 and 1334.

2. Plaintiff United States of America consents to entry of final orders or judgment by the bankruptcy court.

3. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

4. Venue is appropriate in the Western District of Michigan under 28 U.S.C. § 1409(a).

5. Plaintiff is the United States of America acting on behalf of SSA.

6. Debtor-Defendant is Jan A. Sanders, an individual residing within the Western District of Michigan.

7. Debtor-Defendant has been previously known as Jan Alice Jenkins and Jan A. Sanders-Williams.

8. Debtor-Defendant filed a petition under chapter 7 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on February 28, 2018.

9. On March 15, 2018, Debtor-Defendant filed her bankruptcy schedules ("Schedule A" through "Schedule J" and, collectively, the "Schedules").

10. In Schedule F, Debtor-Defendant listed SSA as a creditor holding an unsecured, non-priority claim in the amount of $180,174.00.[1]

11. In Schedule F, Debtor-Defendant provided that the claim was incurred on account of "alleged overpayment of benefits."

## STATUTORY FRAMEWORK

12. The Social Security Act (the "Act") provides that disabled persons who do not engage in substantial gainful activity ("SGA") are entitled to disability insurance benefits ("DIB") if they are insured for such benefits and meet other criteria. *See* 42 U.S.C. § 423(a), (d)(1)(A), (e).

---

[1] SSA's records indicate a current balance of $146,226.60.

13. Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

14. An individual is not disabled "regardless of [her] medical condition," if she is performing "substantial gainful activity." *See* 20 CFR §§ 404.1520(b).

15. A non-blind individual presumptively engages in SGA if her monthly income exceeds the following amounts during the following years:

| Year | Amount |
|------|--------|
| 2002 | $780 |
| 2003 | $800 |
| 2004 | $810 |
| 2005 | $830 |
| 2006 | $860 |
| 2007 | $900 |
| 2008 | $940 |
| 2009 | $980 |
| 2010 | $1000 |
| 2011 | $1,000 |
| 2012 | $1,010 |
| 2013 | $1,040 |
| 2014 | $1,070 |
| 2015 | $1090 |
| 2016 | $1130 |
| 2017 | $1170 |

*See* SSA Official Website, http://www.ssa.gov/oact/cola/sga.html (last visited on June 11, 2018).

## DEBTOR-DEFENDANT AND HER CHILDREN RECEIVED BENEFITS FROM SSA

16. In August 1997, Debtor-Defendant filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* Exhibit A.[2]

---

[2] Cites to a page of an Exhibit do not include the cover page.

17. SSA found Debtor-Defendant to be disabled as of approximately October 1996. She began receiving benefits in June 1998, retroactive to her entitlement date. *See* Exhibit B at 2.

18. Debtor-Defendant was regularly advised of her obligation to report any work activity to SSA. For example, in connection with the filing of her application, Debtor-Defendant agreed "to notify the Social Security Administration if . . . I go to work whether as an employee or a self-employed person"… because such event "may affect my eligibility to disability benefits." *See* Exhibit A at 2.

19. On or about June 20, 2005, SSA informed Debtor-Defendant that her disability was continuing based on income information she provided to the SSA. In a section of the letter titled "THINGS TO REMEMBER FOR THE FUTURE," SSA informed Debtor-Defendant that she "must tell [SSA] right away about any changes that may affect [her] benefits" and that if she did not, she "may have to repay any benefits [she was] not due." Two of the changes that Debtor-Defendant was required to report were: "You went to work since your last report or you return to work in the future," and "You already reported your work, but your duties or pay have changed." *See* Exhibit C at 3.

20. On or about October 24, 2014, SSA again informed Debtor-Defendant that her disability was continuing. In a section of the letter titled "Promptly Report Events Which May Affect Your Benefits," SSA reminded Debtor-Defendant again that she must tell SSA if she "returned to work since [her] last report or [she] return[s] to work the future (no matter how little [she] earn[s]);" or if she "previously reported work, but the duties or pay have changed." She

was again informed that if she failed to do so, she may have to repay benefits not due. *See* Exhibit D at 1.

21. Debtor-Defendant never initiated contact with SSA regarding her work or earnings.

22. Debtor-Defendant concealed her work activity and earnings from SSA.

## **DEBTOR-DEFENDANT WAS OVERPAID FROM 2003 to 2004 and 2010 to 2017**

23. In 2014, SSA mailed Debtor-Defendant a work activity report (SSA-821) after an internal earnings alert was triggered. That work activity report requested that Debtor-Defendant report all of her work activity since March 21, 2007. *See* Exhibit E at 9.

24. On June 20, 2014, Debtor-Defendant responded that she was not self-employed during the relevant time period, nor did she work. *Id.* at 1-18. Instead, Debtor-Defendant stated that she braids friends' and families' hair, and that any money they pay her is reported on her annual tax return. Debtor-Defendant provided worksheets indicating her annual earnings from 2007 through 2013: $7,390 in 2007; $4,260 in 2008; $6,235 in 2009; $4,250 in 2010; $6,000 in 2011; $6,163 in 2012; and $6,150 in 2013. *Id.* at 19-38.

25. The SSA followed up with specific questions based on information provided in the internal earnings alert, and in response to those questions, Debtor-Defendant responded that she stopped braiding hair for family and friends in March 2014. *See* Exhibit E at 35.

26. SSA also asked Debtor-Defendant to explain her work for East Lansing Dental. *Id.* Debtor-Defendant stated that she does not work at East Lansing Dental, but that she volunteers there. She said that she has no job title, is not responsible for anything, has no work

5

schedule, and receives no wages or compensation. *Id.* at 35. She further indicated, "I do not get paid by anyone as I have said before." *Id.* at 36.

27. SSA's Office of Inspector General conducted an independent investigation related to Debtor-Defendant's work activity in and around the same time, and that investigation was completed in approximately 2017.

28. On November 7, 2017 SSA issued a Notice of Proposed Decision. *See* Exhibit F at 1. The notice indicated that SSA had reviewed Debtor-Defendant's work and earning for February 1996 through November 2017. *Id*. That review found that Debtor-Defendant was not entitled to DIB for January 2003 through September 2004 and January 2010 and continuing, because of work performed. *Id*.

29. The notice explained that SSA's record of Debtor-Defendant's earnings and reports from her employers indicated that she worked for Physicians Health Plan from January to December 2002; Capitol Area Transportation from January to December 2001; Nations Title Agency of Michigan from January 2003 to December 2004; State of Michigan from January 1996 to December 2000; Charming Shoppes Inc. from January 2001 to December 2002 and had self-employment income from January 2005 and continuing. *Id.* at 2.

30. Debtor's trial work period months were July through September 2001, and February through July 2002, and her disability ended in August 2002. *See* Exhibit B at 2. However, she was entitled to payment in the month in which the disability ended and in the two following months. Furthermore, she was entitled to a 36-month extended period of eligibility that began in August 2002, during which she was entitled to payment only for months in which she did not perform substantial gainful activity. *Id.* at 2.

31. The November 7, 2017 Notice of Proposed Decision informed Debtor-Defendant that if she believed SSA was incorrect in its determination, she should provide additional information to SSA within ten days. *See* Exhibit F at 1.

32. On November 22, 2017, after Debtor-Defendant did not respond to SSA's Notice of Proposed Decision, SSA issued a revised decision, adopting the findings of the proposed decision—that is, that Debtor-Defendant was not entitled to payments between January 2003 and September 2004, and January 2010 and continuing, because of substantial work. *See* Exhibit G at 1.

33. On December 12, 2017, SSA advised Debtor-Defendant that she had been overpaid in the total amount of $146,226.60, that she received between January 2003 and September 2004, and January 2010 through November 2017, while not entitled to those benefits. *See* Exhibit H at 1.[3]

34. Although SSA's decisions advised Debtor-Defendant of the right to seek administrative review, Debtor-Defendant did not seek such review. Debtor-Defendant's failure to promptly and accurately report her ongoing work activity from 2002 through 2017 in accordance with her reporting responsibilities caused SSA to overpay Debtor-Defendant benefits to which she was not entitled in an amount totaling $146,226,60. *See* Exhibit B at 3, 5.

35. Moreover, Debtor-Defendant's assertions in July 2014 that she was not employed, had no wages or compensation, and was not paid, were knowingly false. *See* Exhibit E at 35-36.

---

[3] Debtor-Defendant was overpaid $164,043.60, but SSA subtracted from that total a previously waived overpayment calculated in 2005 in the amount of $17,817.00.

DEBTOR-DEFENDANT PLED GUILTY TO SOCIAL SECURITY FRAUD

36. On February 1, 2018, the United States Attorney for the Western District of Michigan charged Debtor-Defendant with Social Security Fraud in the District Court for the Western District of Michigan, Case No. 1:18-cr-18. *See* Exhibit I. The Felony Information charged Debtor-Defendant with "knowingly and willfully making false statements and representations of material facts in a Social Security Administration Statement of Claimant or Other Person (OMB Form 0960-0045)," in violation of 42 U.S.C. § 408(a)(3). *See Id.*

37. On February 5, 2018, Debtor-Defendant entered a guilty plea, admitting that she "made a false statement or representation; the statement or representation was for use in determining the right to a federal benefit; and that the statement or representation was of a material fact." *See* Exhibit J at 1, ¶ 2.

38. Debtor-Defendant also acknowledged that "the time period for which she may be responsible for an administrative overpayment may be longer than the time period determined for criminal fraud loss and restitution," *Id.* at 2, ¶ 4. That longer time period is set forth in the allegations above, which Debtor-Defendant has not challenged in the administrative overpayment proceeding.

39. Debtor-Defendant was sentenced on May 21, 2018 to a two-year term of probation, as well as, criminal restitution. *See* Exhibit K at 2, 4.

**EXCEPTION FROM DISCHARGE OF DEBT OWED BY DEBTOR-DEFENDANT TO SSA PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

40. The allegations contained in paragraphs 1 through 39, above, are incorporated herein by reference.

8

41. Debtor-Defendant had a duty to timely and accurately report her work activity and earnings to SSA.

42. Debtor-Defendant had a duty not to make false statements about her work activity and earnings to SSA.

43. Debtor-Defendant, by her failure to report her earnings to SSA, concealed material facts from SSA and thereby fraudulently misrepresented her eligibility for benefits.

44. Debtor-Defendant, by making false statements to SSA, concealed material facts from SSA and thereby fraudulently misrepresented her eligibility for benefits.

45. Debtor-Defendant's knowing and willful failure to inform SSA that she worked and earned income in an amount sufficient to constitute SGA, induced SSA to overpay benefits to Debtor-Defendant.

46. SSA justifiably relied on Debtor-Defendant to timely and accurately report her employment and earnings.

47. Debtor-Defendant's failure to timely and accurately report her employment and earnings, induced SSA into an overpayment in the amount of $146,226.60.

48. Pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, the overpayment of $146,226.60 is a nondischargeable debt in Debtor-Defendant Sanders' bankruptcy case.

**WHEREFORE**, the United States of America, for SSA, respectfully requests that this honorable Court:

(1) Find that $146,226.60 owed by Debtor-Defendant Sanders to the United States of America, SSA, constitutes a nondischargeable sum pursuant to 11 U.S.C. § 523(a)(2)(A);

(2)  Enter judgment against Debtor-Defendant Sanders and in favor of the United States of America in the principal amount of $146,226.60, plus interest at the judgment rate;

(3)  Order that SSA may set off or recoup any future benefits, pursuant to DIB, Social Security Income ("SSI"), Retirement Survivor Income ("RSI"), or otherwise, that Debtor-Defendant Sanders may receive, which it may apply to satisfy the judgment without violating the automatic stay in this case or any other injunction;

(4)  Order that SSA may set off any remaining sums owed by Debtor-Defendant Sanders against tax refunds or other withholdings to the extent authorized by law;

(5)  Order that if Debtor-Defendant Sanders should die prior to fully satisfying her debt to SSA, SSA shall have a claim against Debtor-Defendant Sanders' estate for any and all remaining amounts owed to SSA, and will be given priority over other claims, pursuant to 31 U.S.C. § 3713, if there are insufficient assets in the estate to pay other claims;

(6)  Order that if Debtor-Defendant Sanders defaults on her repayment obligations, SSA reserves the right to pursue all legal means to collect the outstanding debt, including, but not limited to, placement into the Treasury Offset Program, Administrative Wage Garnishment, and any other legally available means for collection of the debt; and

(7)  Award the United States of America, SSA, such other relief as the Court may deem appropriate.

Dated: June 18, 2018                                Respectfully submitted,

                                                    ANDREW BYERLY BIRGE
                                                    United States Attorney

                                      By:    /s/ Michael L. Shiparski
                                              Michael L. Shiparski (P33064)
                                              Assistant United States Attorney
                                              P.O. Box 208
                                              Grand Rapids, MI 49501
                                              Phone:  (616) 456-2404
                                              E-mail: Mike.Shiparski@usdoj.gov

11